**McNAMARA, Appellant,**

v.

**OHIO DEPARTMENT OF HUMAN SERVICES, Appellee.**

[Cite as *McNamara v. Ohio Dept. of Human Serv.* (2000), 139 Ohio App.3d 551.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 18234.

Decided Aug. 4, 2000.

*Michael Millonig,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Patrick W. Beatty,* Assistant Attorney General, Health and Human Services Section, for appellee.

FAIN, Judge.

Plaintiff-appellant Rheba McNamara appeals from a decision of the Montgomery County Court of Common Pleas affirming an administrative determination finding her ineligible to receive Medicaid nursing home vendor payments for a period of thirty months upon the ground that she and her husband had improperly transferred most of their assets to a "spousal annuity trust," allegedly established for the sole benefit of the husband. Mrs. McNamara argues that the

trial court erred in affirming the administrative decision because the trust instrument that she and her husband used to shelter their assets was "for the sole benefit of her spouse," and, therefore, was not a countable resource for purposes of determining her eligibility for Medicaid nursing home payments. She further argues that Section 1396p(c)(2)(B), Title 42, U.S.Code, adopted in this state as Ohio Adm.Code 5101:1–39–078(A)(2), permits an individual to make an unlimited transfer of resources to his or her spouse, notwithstanding the Community Spouse Resource Allowance limits set forth in Section 1396r–5(f), Title 42, U.S.Code, adopted in this state as Ohio Adm.Code 5101:1–39–36.

We conclude that if Section 1396p(c)(2)(B) were construed to allow an unlimited transfer of resources between spouses, the Community Spouse Resource Allowance limits established under Section 1396r–5(f) would be rendered a nullity. Therefore, we hold that pursuant to the supersession clause of Section 1396r–5(a)(1), the amount of resources that one person may transfer to his or her spouse is limited to the maximum amounts the community spouse may retain under the CSRA provision in Section 1396r–5(f). Accordingly, the judgment of the trial court is affirmed.

I

On October 5, 1997, Rheba McNamara entered the Bethany Lutheran Village nursing home. Her husband, Joseph B. McNamara, resides independently at a cottage unit at Bethany. At the time Mrs. McNamara entered the nursing home, the couple had resources valued at $256,130.87. In April 1998, Mr. McNamara, acting on the couple's behalf, created an irrevocable trust, known as the "Spousal Annuity Trust fsbo [for the sole benefit of] Joseph McNamara, dated 4/1/98." Under the terms of the trust, the monthly income from the trust corpus was to be paid to Mr. McNamara, and the principal was to be paid to Mr. McNamara in annual payments for a period of five years. Mrs. McNamara is to receive no benefit from the trust. At the time the trust was created, Mr. McNamara was seventy-six years old, and had a life expectancy of 8.76 years. He had no authority to withdraw any funds from the trust, and upon his death, any funds remaining in the trust were to be distributed to the McNamaras' two children. Over the next several months, the McNamaras transferred over $221,000 to the trust.

In July 1998, Mrs. McNamara applied for Medicaid benefits with the Montgomery County Department of Human Services ("MCDHS"). The MCDHS determined that the McNamaras' decision to place their assets in the trust constituted an improper transfer of resources because the assets had been transferred for less than fair market value. Accordingly, the MCDHS ruled that while Mrs. McNamara was eligible for regular Medicaid, she was ineligible to receive

nursing home vendor payments for a period of thirty months, running from April 1, 1998 to September 30, 2000.

Mrs. McNamara appealed the denial of nursing home vendor payments to the Ohio Department of Human Services ("ODHS"). After holding a hearing on the matter, the state hearing officer affirmed MCDHS's finding that an improper transfer had occurred. Mrs. McNamara appealed the state hearing officer's decision to the ODHS. The administrative hearing examiner affirmed the state hearing officer's decision.

In June 1999, Mrs. McNamara appealed the denial of her administrative appeal to the Montgomery County Court of Common Pleas. On February 29, 2000, the trial court affirmed the order of the ODHS, declaring Mrs. McNamara ineligible to receive nursing home vendor payments for thirty months. The trial court found that the transfer of resources to the trust was an improper transfer because under the terms of the trust, any amounts remaining in the trust at the time of Mr. McNamara's death would be passed to the McNamaras' two children, and, therefore, the trust was not for the sole benefit of Mr. McNamara. The trial court further found that even if the transfer was not improper, the trust assets were still countable resources that had to be deemed available to the McNamaras to pay for the nursing home expenses because the amount of assets retained by Mr. McNamara through the use of the trust exceeded the maximum amount he was permitted to retain under the community spouse resource allowance provision.

Mrs. McNamara appeals from the trial court's decision affirming the administrative determination that she is ineligible to receive nursing home vendor payments for a period of thirty months.

II

Mrs. McNamara's first assignment of error states:

"The common pleas court ruling that there was an improper transfer and a period of ineligibility for nursing home vendor payments is an incorrect application of law."

Mrs. McNamara argues that pursuant to Section 1396p(c)(2)(B), Title 42, U.S.Code, a person may transfer an unlimited amount of funds to his or her spouse or to a third person for the sole benefit of the individual's spouse, notwithstanding the limits of the community spouse resource allowance provision contained in Section 1396r–5, Title 42, U.S.Code. Mrs. McNamara further contends that the funds she and her husband transferred into the Spousal Annuity Trust were for the sole benefit of Mr. McNamara despite the "mere" fact that the trust designates their two children as the remainder beneficiaries in the

event Mr. McNamara dies before the trust corpus has been distributed to him. Therefore, Mrs. McNamara contends, the transfer of a majority of their resources to the spousal annuity trust was not an improper transfer rendering her ineligible to receive Medicaid nursing home vendor payments for a period of thirty months. We disagree.

Medicaid was enacted in 1965 as Title XIX of the Social Security Act to provide federal funds to pay for the medical treatment of needy persons. *Martin v. Ohio Dept. of Human Serv.* (1998), 130 Ohio App.3d 512, 515, 720 N.E.2d 576, 578–579. Prior to 1988, a married person in a nursing home had to "spend down" all of the couple's jointly held assets to the eligibility limit in order to receive assistance, thereby leaving the couple impoverished. *Id.* at 518, 720 N.E.2d at 580–581. However, during this same period, it was possible for a married couple to shelter significant amounts of their assets by transferring them into the name of the spouse not seeking Medicaid benefits, since only jointly held assets were considered available for the institutionalized spouse's needs. *Id.*

Congress addressed this problem by enacting the Medicare Catastrophe Coverage Act of 1988, Section 1396r–5, Title 42, U.S.Code. *Id.* While most of the provisions of the MCCA were repealed in 1989, this section has been retained. *Id.* Under the MCCA, all of a couple's resources are considered in determining Medicaid eligibility regardless of whether the assets are jointly or separately held. *Id.* Generally, the MCCA permits the spouse living outside the nursing home, "the community spouse," to retain one-half of the couple's resources without affecting the eligibility of the spouse living in the nursing home, "the institutionalized spouse," to receive Medicaid benefits. *Id.* After the couple's resources are divided in half, the community spouse's share cannot exceed a specified maximum amount, indexed to inflation, *id.,* which, at the time the McNamaras applied for nursing home payments, was approximately $80,000. See Ohio Adm.Code 5101:1–39–36(C) This adjusted amount is known as the Community Spouse Resource Allowance ("CSRA"), and any of the couple's resources exceeding the CSRA that are not otherwise excluded from consideration are deemed available to the institutionalized spouse to be used for his or her care. 130 Ohio App.3d at 518–519, 720 N.E.2d at 580–582.

The institutionalized spouse may spend down any amount in excess of the eligibility levels to receive Medicaid benefits, *id.* at 519, 720 N.E.2d at 581–582; however, an individual's ability to dispose of the excess resources is limited. For instance, if an individual transfers "his legal interest in a countable resource for less than fair market value for the purpose of qualifying for medicaid, a greater amount of medicaid, or to avoid the utilization of the resource[,]" the resource transfer is considered improper. Ohio Adm.Code 5101:1–39–07. If an individual or his or her spouse, applying for Medicaid or in receipt of Medicaid, made an

improper transfer of resources, that individual is subject to a period of restricted medicaid coverage for "long term care facility (LTCF) (*i.e.,* nursing home) vendor payments." Ohio Adm.Code 5101:1–39–077(B).

Mrs. McNamara acknowledges that, at first blush, application of the general transfer rule indicates that the transfer of resources that took place here was improper. However, Mrs. McNamara argues that the transfer of resources to the Spousal Annuity Trust fits within an exception to the improper transfer rule set forth in Ohio Adm.Code 5101: 1–39–078(A)(2), which essentially incorporates Section 1396 p(c)(2)(B), Title 42, U.S.Code. Ohio Adm.Code 5101: 1–39–078(A)(2) provides:

"[T]he individual may transfer resources * * * to:

"(a) The individual's spouse (or to another for the sole benefit of the spouse), or to the community spouse provided the spouse does not transfer the resources to another for less than fair market value[.]"

Ohio Adm.Code 5101: 1–39–05(A)(13) provides:

" 'A transfer for the sole benefit of' means a transfer arranged in such a way that no individual or entity except the spouse * * * can benefit from the assets transferred in any way, whether at the time of the transfer or at any time in the future.

"(a) A trust is considered to be established for the sole benefit of a spouse * * * if the trust benefits no one but that individual, whether at the time the trust is established or any time in the future. * * *

"(b) A transfer, transfer instrument, or trust that provides for funds or property to pass to a beneficiary who is not the spouse * * * is not considered to be established for the sole benefit of [the spouse]. In order for a transfer or trust to be considered to be for the sole benefit of [the spouse], the instrument or document must provide for the spending of the funds involved for the benefit of the individual on a basis that is actuarially sound based on the life expectancy of the individual involved. When the instrument.or document does not so provide, any potential exemption from penalty or consideration for eligibility purposes is void."

Mrs. McNamara asserts that the issue of whether a trust has been established "for the sole benefit of a spouse" turns entirely on whether the trust instrument is "actuarially sound" and further asserts that the trust in this case is. ODHS acknowledges that the trust is actuarially sound but argues that in order for the trust to meet the "sole benefit" requirement, it must satisfy several additional criteria, including that no one except the spouse can "benefit from the assets transferred in any way, whether at the time of the transfer or at any time in the future." ODHS asserts that the McNamaras' trust violates this requirement

because it has remainder beneficiaries. Mrs. McNamara counters that the presence of remainder beneficiaries after Mr. McNamara's death "is a certainty under the law," whether the beneficiaries are designated in the trust, Mr. McNamara's will, or by the statute of descent and distribution contained in R.C. 2105.06. Mrs. McNamara argues that the only rational interpretation of the sole benefit requirement is that the trust must be for the sole benefit of the community spouse *during his or her lifetime,* because after the community spouse dies, he or she can no longer be a beneficiary of the trust.

Leaving aside the parties' arguments regarding whether the trust satisfied the sole benefit requirement, we conclude that there is a more fundamental flaw in the McNamaras' argument. Section 1396r–5(a)(1), Title 42, U.S.Code, states:

"In determining the eligibility for medical assistance of an institutionalized spouse * * *, the provisions of this section supersede any other provision of this subchapter (including sections 1396a(a)(17) and 1396a(f) of this title) which is inconsistent with them."

■ The subchapter referred to is Subchapter XIX—Grants to States for Medical Assistance Programs—and, therefore, is inclusive of all of Section 1396, Title 42, U.S.Code. It follows then that the CSRA provision contained in Section 1396r–5(f) supersedes any inconsistent provision in Section 1396p(c). As ODHS points out, if Section 1396p(c)(2)(B), which has been adopted in this state as Ohio Adm.Code 5101:1–39–078(A)(2), is construed to allow an unlimited transfer of resources between spouses, then the CSRA limits established under Section 1396r–5(f), and adopted in this state as Ohio Adm.Code 5101:1–39–36, will be rendered a nullity. Accordingly, we hold that pursuant to the supersession clause of Section 1396r–5(a)(1), the amount of funds that one person may transfer to his or her spouse under Section 1396p(c)(2)(B) is limited to the maximum amounts the community spouse may retain under the CSRA provision in Section 1396r–5(f).

■ Mrs. McNamara raises several arguments in opposition to this view. First, she cites Health Care Financing Administration ("HCFA") Transmittal 64–3258.11, which states:

"The exceptions to the transfer of assets penalties regarding interspousal transfers and transfers to a third party for the sole benefit of a spouse apply even under the spousal impoverishment provisions [contained in Section 1396r–5]. Thus, the institutional spouse can transfer unlimited assets to the community spouse or to a third party for the sole benefit of the community spouse. "* * *

"The exception for transfers to a third party for the sole benefit of the spouse may have greater impact on eligibility because resources may potentially be placed beyond the reach of either spouse and thus not be counted for eligibility purposes. However, for the exception to be applicable, the definition of what is for the sole benefit of the spouse * * * must be fully met."

Mrs. McNamara urges this court to find HCFA Transmittal 64–3258.11 to be controlling on the issue of whether an individual may make an unlimited transfer of resources to his or her spouse pursuant to Section 1396p(c)(2)(B). We decline to do so.

■ HCFA is the federal agency responsible for promulgating Medicaid regulations. HCFA policy transmittals like Transmittal 64 are entitled to some deference by reviewing courts *if* they are consistent with the plain language and purposes of the statute and prior administrative views. *Johnson v. Guhl* (D.N.J.2000), 91 F.Supp.2d 754, 779, citing *Cleary v. Waldman* (C.A.3, 1999), 167 F.3d 801, 808. As stated earlier, if couples like the McNamaras were permitted to make unlimited transfers of resources between them pursuant to Section 1396p(c)(2)(B), the CSRA provisions contained in Section 1396r–5(f) would be rendered a nullity. Construing Section 1396p(c)(2)(B) in the manner Mrs. McNamara requests would allow persons with unlimited resources to avail themselves of Medicaid nursing home benefits.

Mrs. McNamara acknowledges this possibility but discounts it by arguing that wealthy persons will opt for superior, private nursing home care. She further contends that Congress intentionally created this loophole in the rules governing Medicaid eligibility in order to benefit the middle class. We find both of these arguments unpersuasive. While some wealthy individuals undoubtedly will opt for private care rather than settle for nursing home services provided by Medicaid, a significant number will not, particularly those elderly citizens who place a high premium on maximizing the legacies they leave to their children. Furthermore, if Congress had intended to benefit the middle class, this could have been achieved simply by increasing the CSRA.

■ Mrs. McNamara also argues that her trust should be treated under the rules governing annuities found in Ohio Adm.Code 5101:1–39–228. We disagree. Despite Mrs. McNamara's assertions to the contrary, Ohio Adm.Code 5101:1–39–228 relates to commercially purchased annuities and not to "annuitized" trusts like the one established by the McNamaras. See Ohio Adm.Code 5101:1–39–228(B) ("When an individual purchases an annuity, the individual generally pays to the entity issuing the annuity [e.g., a bank or insurance company] a lump sum of money, in return for which the individual is promised regular payments of income in certain amounts."). See, also, April 16, 1998 letter from HCFA's

Robert Streimer to private party, attached as Appendix 19 to appellant's brief ("annuitized" trust is not the same thing as a "standard" or commercially purchased annuity, since a standard annuity requires actual purchase of a commodity, *i.e.*, the annuity itself, and upon completion of the transaction, the buyer no longer owns the funds used to purchase it).

In light of the foregoing, we affirm, though on different grounds, the trial court's ruling that the McNamaras improperly transferred the majority of their resources to the Spousal Annuity Trust, and were, therefore, subject to a thirty-month period of ineligibility for receiving Medicaid nursing home vendor payments.

Accordingly, Mrs. McNamara's first assignment of error is overruled.

### III

Mrs. McNamara's second assignment of error states:

"The common pleas court ruling that the assets of the Spousal Annuity Trust FSBO Joseph McNamara, 4/1/98, are countable resources is an incorrect application of law."

Mrs. McNamara's second assignment of error has been rendered moot in light of our disposition of her first assignment of error; therefore, it is overruled as moot. See App.R. 12(A)(1)(c).

### IV

Both of Mrs. McNamara's assignments of error having been overruled, the judgment of the trial court is affirmed.

*Judgment affirmed.*

GRADY, P.J., and FREDERICK N. YOUNG, J., concur.