Pauline A. ROSS, by her personal representative David P. ROSS, Petitioner

v.

DEPARTMENT OF PUBLIC WELFARE, Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 2007.

Decided Nov. 15, 2007.

John B. Payne, Wexford, for petitioner.

Jason Manne, Sr. Asst. Counsel, Pittsburgh, for respondent.

BEFORE: FRIEDMAN and COHN JUBELIRER, JJ., and FLAHERTY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Pauline A. Ross (Pauline), by her personal representative David P. Ross (David), petitions for review of the December 19, 2006, order of the Department of Public Welfare (DPW), which affirmed the decision of an Administrative Law Judge (ALJ) to deny Pauline's appeal from the denial of medical assistance benefits for nursing home care by DPW's county assistance office. We reverse.

On February 5, 2003, Pauline entered a nursing home. On April 8, 2005, Pauline's community spouse,[1] Leonard Ross (Leonard), transferred $418,026.66 in marital assets into a "Medicaid Qualified, Single Premium, Immediate Annuity" (F & G Annuity). The annuity is held by Wachovia Trust Company as trustees for the F & G Group Insurance Trust (F & G). Under the annuity contract, F & G pays Leonard $10,211.83 per month from May 15, 2005, to September 15, 2008. (ALJ's Findings of Fact, Nos. 1–2, 9.)

Leonard established the F & G Annuity so that Pauline would be eligible for Medical Assistance–Nursing Home Care (MA–NHC) benefits and in order to pass the marital assets on to the next generation. Leonard is the owner and sole annuitant of the F & G Annuity, and Leonard's three children are the sole beneficiaries in the event Leonard dies before September 15, 2008. Pauline has no pecuniary interest in the F & G Annuity, and, after Leonard transferred the marital assets into the F & G Annuity, Pauline had no assets with which to pay for her nursing home care. (ALJ's Findings of Fact, Nos. 4–8, 10, 12.)

Leonard's payment of $418,026.66 is irrevocable, and Leonard may not terminate the annuity. However, Leonard may alter the beneficiaries during the term of the annuity or sell his right to receive the income stream. Companies exist that will pay a lump sum to an annuitant on similarly structured annuities in exchange for the annuitant assigning to them the right to receive the monthly income. These com-

---

1. A "community spouse" is a spouse living at home who has a spouse who had lived at home but is now an "institutionalized spouse," i.e., a spouse receiving care in a nursing home for a period likely to last for at least thirty consecutive days. 55 Pa.Code § 178.2.

panies have successfully convinced some annuity companies to acknowledge such an assignment and have successfully convinced some courts to declare such income stream assignments as valid. (ALJ's Findings of Fact, Nos. 13–18.)

On May 27, 2005, Leonard filed an MA–NHC application on behalf of Pauline. The county assistance office determined that the F & G Annuity was an available resource and that, as of November 15, 2006, its fair market value was $202,364.00. (ALJ's Findings of Fact, Nos. 3, 20, 28, 30.)

Leonard filed an appeal on behalf of Pauline, which, after a hearing, the ALJ denied. In its adjudication, the ALJ determined that: (1) the language of the F & G Annuity does not interfere with Leonard's ability to sell his right to receive an income stream, thereby converting the annuity into immediate cash; (2) the present value of the income stream exceeds the applicable resource limit; and (3) the F & G Annuity was purchased not only for the benefit of Leonard, the community spouse, but also to provide a tax-free, probate-free vehicle through which to transfer wealth to the next generation and to make Pauline eligible for MA–NHC benefits. On further appeal, DPW affirmed the ALJ's decision. Pauline, by her personal representative, David, now petitions this court for review.[2]

■ Pauline argues that DPW erred in concluding that the income stream from the F & G Annuity is an available resource for purposes of determining Pauline's eligibility for MA–NHC benefits. We agree.

In determining the eligibility of an institutionalized spouse for MA–NHC benefits,

the provisions of 42 U.S.C. § 1396r–5 supersede any other provision of Title 42 that is inconsistent with those provisions. 42 U.S.C. § 1396r–5(a)(1). In *James ex rel. James v. Richman,* 465 F.Supp.2d 395 (M.D.Pa.2006), the federal court explained that Congress enacted this provision to protect community spouses from becoming impoverished while the other spouse is in a nursing home.

■ Under 42 U.S.C. § 1396r–5, income and resources receive separate treatment. With respect to income, "no income of the community spouse shall be deemed available to the institutionalized spouse." 42 U.S.C. § 1396r–5(b)(1). Thus, "[t]he community spouse's income is … preserved for that spouse and does not affect the determination [of] whether the institutionalized spouse qualifies for Medicaid." *James,* 465 F.Supp.2d at 398 (quoting *Wisconsin Department of Health & Family Services v. Blumer,* 534 U.S. 473, 480–81, 122 S.Ct. 962, 151 L.Ed.2d 935 (2002)).

■ Under 42 U.S.C. § 1396r–5(b)(2), where the payment of income from a trust or other instrument is made solely in the name of the community spouse, the income shall be considered income to that spouse only, unless the instrument providing the income specifically provides otherwise. Here, the payment of income from the F & G Annuity is made solely in the name of Leonard. Thus, that income is considered income to Leonard only, and none of Leonard's income shall be deemed available to Pauline. 42 U.S.C. § 1396r–5(b)(1).

■ In spite of the plain language of 42 U.S.C. § 1396r–5, DPW treated Leonard's **income** from the F & G Annuity as an available **resource** because certain compa-

---

**2.** Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with law and whether the necessary findings are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

nies would pay Leonard a lump sum in cash for the right to receive the income stream.[3] However, in *Estate of F.K. v. Division of Medical Assistance and Health Services,* 374 N.J.Super. 126, 863 A.2d 1065 (.App.Div.), *certification denied,* 184 N.J. 209, 876 A.2d 283 (2005), the Superior Court of New Jersey stated that treating the market value of an income stream paid to a community spouse as a resource "blurs the distinction between re-source allocation and income allocation" under the federal law. *Id.* at 1076. Likewise, in *James,* the federal court stated that, to consider the market value of an income stream as an available resource "would completely undermine federal law, which excludes income of the community spouse from factoring into the institution-alized spouse's Medicaid eligibility." *James,* 465 F.Supp.2d at 406. Thus, we conclude that DPW improperly considered Leonard's income stream from an irrevo-cable and non-assignable annuity as an available resource based on the existence of a secondary market for such income streams. *F.K.; James.*

DPW contends that, if we permit a cou-ple *to convert substantial marital re-sources into an income stream owned solely by the community spouse, then the couple would be able to shift the cost of the institutionalized spouse's nursing home care to the taxpayers and preserve an unlimited amount of funds for the com-munity spouse and heirs.* (DPW's brief at 7.) However, this argument was addressed in *Mertz ex rel. Mertz v. Houstoun,* 155 F.Supp.2d 415 (E.D.Pa.2001), in which the court held, like *James* and *F.K.,* that the income stream from an annuity is not a countable resource under federal law.

In short, a couple may effectively con-vert countable resources into income of the community spouse which is not countable in determining Medicaid eligi-bility for the institutionalized spouse by purchasing an irrevocable actuarially sound commercial annuity for the sole benefit of the community spouse. It is a loophole apparently discerned by law-yers and exploited by issuers who adver-tise such annuities as a means to qualify for Medicaid benefits. . . .

The practice is inconsistent with an ap-parent purpose of the [federal law] and indeed the whole thrust of the Medicaid program which is to provide assistance to those truly in need. It has no doubt frustrated not only the DPW but also program administrators in other states. As at least one neighboring state has apparently acknowledged, however, the practice is permissible under existing federal law. Indeed, the New Jersey [authorities have] permitted community spouses who mistakenly believed that assets transferred to an annuitized trust would not be countable in determining Medicaid eligibility for the institutional-ized spouse to convert the trusts into commercial annuities to qualify for bene-fits.

It is not the role of the court to compen-sate for an apparent legislative oversight by effectively rewriting a law to comport with one of the perceived or presumed purposes motivating its enactment. It is for the Congress to determine if and how this loophole should be closed.

*Mertz,* 155 F.Supp.2d at 427–28 (footnotes omitted) (citations omitted). We note that,

---

**3.** In its brief, DPW asserts that it is required to use the resource standards for the Supple-mental Security Income (SSI) program, and, under SSI regulations, a "resource" is a liq-uid asset that an individual or spouse owns and could convert to cash. (DPW's brief at 8.) However, to the extent that the SSI regula-tions conflict with 42 U.S.C. § 1396r–5, they are superseded. 42 U.S.C. § 1396r–5(a)(1).

according to DPW, Congress closed the loophole "by enacting section 6012 of the Deficit Reduction Act of 2005, P.L. 109–171." (DPW's brief at 5.)

DPW also contends that *Dempsey ex rel. Dempsey v. Department of Public Welfare,* 756 A.2d 90 (Pa.Cmwlth.2000), requires a different result than that reached in *James, Mertz* and *F.K.* We disagree. The issue presented in *Dempsey* was whether the community spouse's purchase of an annuity was for less than fair market value and, thus, for the improper purpose of qualifying for MA benefits. Here, the ALJ noted that DPW "conceded the question of fair consideration" and "specifically conceded the community spouse's purchase of the annuity was made at fair market value.... Therefore, that issue was not considered in this appeal." (ALJ's adjudication at 16 n. 7.) *Dempsey,* then, which never addressed whether an income stream from an annuity is an available resource based on a secondary market for such income streams, has no relevance here.

Accordingly, we reverse.

*ORDER*

AND NOW, this 15th day of November, 2007, the order of the Department of Public Welfare, dated December 19, 2006, is hereby reversed.