

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-6-2004

# Johnson v. Guhl

Precedential or Non-Precedential: Precedential

Docket No. 01-3774

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Johnson v. Guhl" (2004). *2004 Decisions.* Paper 964.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/964

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

DONALD H. JOHNSON; JUANITA L. JOHNSON;
EUGENE V. MARIANI; DOROTHY MARIANI;
MARY LOU FLEMING; WILLIAM R. FLEMING;
WILLIAM C. SCHAIBLE; PHYLLIS R. SCHAIBLE,
by her Court Appointed Guardian;
LOIS BENEDETTO; GERALD BENEDETTO;
DONNA R. BANKS; CHARLES V. BANKS, Estate of;
RAYMOND O. DENMAN, JR.;
FRANCES C. DENMAN;
CHARLES N. HICKS; MARIE L. HICKS;
ANN B. SILBERNAGEL; NORMAN V. SILBERNAGEL;
ANNA PRYSTASCH; STANLEY PRYSTASCH;
MARY MACKRON; ANTHONY MACKRON, Estate of;
JANET WHALON; HAROLD B. WHALON, JR.;
BERNADINE WEISER; RICHARD C. WEISER;
GRACE LAFORGE; BLACE LAFORGE; JOHN FILLMORE;
MARY FILLMORE; JOHN DOE, (1-5 fictitious names);
JANE DOE, (1-5 fictitious names);ROBERT GROSS;
GEORGE ALLEN; Social Services;
THOMAS KOELHOFFER; FRANCES KOELHOFFER;
WILLIAM KELLY; KATHRYN KELLY;
MARCELLA FINKEL; JACK FINKEL; EDNA ALLEN;
WILLARD NICKERSON; ETHEL NICKERSON;
GERALDINE ANN SAHL; GEORGE J. SAHL;
MARGARET BAKERIAN; VASGEN BAKERIAN;
CHARLES DERROT; LOUISE DERROT;
MIGUEL OBREGON; ONELIA OBREGON;
ROY W. MCDOWELL; JUNE M. MCDOWELL;
JOSEPH MEZZO; CARMELLA MEZZO;
MATHILDA GROSS

v.

MICHELLE K. GUHL, Commissioner; STATE OF
NEW JERSEY, DEPARTMENT OF HUMAN SERVICES,
MARGARET A. MURRAY, Director, Division of
Medical Assistance and Health Service;
JOHN ROE, (1-5 fictitious names) their
agents, servants, employees, and/or
assigns, jointly, severally or in the
alternative; EDWARD TESTA, Director,
Bergen County Board of Social Services;
ELIZABETH LEHMANN, Director, Morris
County Board of Social Services;
JAMES WILLIAMS, Director, Essex

County
Board of Social Services; JANE ROE,
Director, ABC County Board of Social
Services, (1-5 fictitious names);
ESSEX COUNTY BOARD OF
CHOSEN FREEHOLDERS
ESSEX COUNTY BOARD OF SOCIAL
SERVICES;

Donald H. Johnson, Juanita L. Johnson,
William C. Schaible, Phyllis R. Schaible,
Charles N. Hicks, Marie L. Hicks,
Ann B. Silbernagel, Norman V.
Silbernagel,
Anna Prystasch, Stanley Prystasch,

Appellants

On Appeal from the
United States District Court for the
District of New Jersey
D.C. Civil Action No. 99-cv-05403
(Honorable Dennis M. Cavanaugh)

Argued April 22, 2003

Before: SCIRICA\*, Chief Judge,
AMBRO and WEIS, Circuit Judges

\*Judge Scirica began his term as
Chief Judge on May 4, 2003.

(Opinion filed: February 6, 2004)

Donald M. McHugh, Esquire (Argued)
McHugh & Macri
49 Ridgedale Avenue
East Hanover, NJ   07936

National Academy of Elder Law
Attorneys
New Jersey Chapter
Eugene Rosner, Esquire
1093 Raritan Road
Clark, NJ   07066

*Attorneys for Appellants*

David Samson
Attorney General of New Jersey
Michael J. Haas
Assistant Attorney General
M. Elizabeth Doyle (Argued)
Deputy Attorney General
Office of Attorney General of New
Jersey
Division of Law, P.O. Box 112
R. J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625

*Attorneys for Appellees*
*Commissioner and State Divisions*

Edwin C. Eastwood, Jr., Esquire
Law Offices of Edwin C. Eastwood, Jr.
723 Kennedy Boulevard
North Bergen, NJ  07047

*Attorney for Appellee*

*Edward Testa*

Daniel W. O'Mullan, Esquire
O'Mullan & Brady
57 Whippany Road
Whippany, NJ 07981

     *Attorney for Appellee*
     *Elizabeth Lehmann*

---

OPINION OF THE COURT

---

AMBRO, Circuit Judge

Medicaid is a federal assistance program, administered by the states, that helps individuals with below a certain level of assets pay for medical expenses.[1] Because Medicaid is available only to the needy, creative lawyers and financial planners have devised various ways to "shield" wealthier claimants' assets in determining Medicaid eligibility. In this context, we decide, among other issues, whether New Jersey has correctly interpreted federal law to preclude use of a private annuity trust to shield assets.

## I. Background

Plaintiffs in this case are elderly couples in which one spouse resides in a nursing home (the "institutionalized spouse") and the other resides in the community (the "community spouse"). Plaintiffs, New Jersey residents, sought and were denied Medicaid benefits because their assets exceed a level qualifying them for Medicaid eligibility. They challenge their benefits denials under 42 U.S.C. § 1983, and seek both injunctive relief and a declaratory judgment. The District Court held, *inter alia*, that New Jersey did not violate federal law in denying plaintiffs benefits and thus dismissed their complaint.

Whether plaintiffs are entitled to Medicaid benefits depends on how we view certain private trusts they established for the community spouse's benefit. Those trusts, known as Community Spouse Annuity Trusts ("CSATs"), are designed to provide a stream of annuity payments to the community spouse for the duration of his or her life. From 1994 to 1999, New Jersey did not consider the corpus of these CSATs as "countable" assets – that is, among plaintiffs' available resources for Medicaid eligibility purposes – so long as, on the community spouse's death, New Jersey would be the first beneficiary of the CSAT to the extent that the State paid benefits on behalf of the institutionalized spouse ("state payback" or "state-payback requirement"). Thus, New Jersey effectively permitted Medicaid claimants to use CSATs to shield a couple's assets from Medicaid eligibility determinations during the community spouse's lifetime. New Jersey would then be reimbursed

---

[1]The Medicaid Act is codified at 42 U.S.C. § 1396 *et seq.*

3

for benefits paid if any funds remained in the CSAT after the community spouse's death. If no funds remained, New Jersey would recover nothing.

In 1999 New Jersey changed its position on the countability of CSATs, largely in response to an earlier interpretive letter from an employee of the Department of Health and Human Services ("HHS") stating that trusts such as CSATs should be considered countable assets. With this change New Jersey considers CSATs among Medicaid claimants' assets when determining their total resources for eligibility purposes. Thus, CSATs can no longer be used to shelter assets.[2] New Jersey has taken a similar position with respect to commercial annuities.[3]

_____

[2]In this context, state paybacks no longer were exacted.

[3]Like CSATs, commercial annuities provide a stream of payments (in this context, to the community spouse) for a fixed term of years. However, they are administered differently from CSATs. Whereas the corpus of a CSAT is administered by a trustee, who is often related to the elderly couple, the "corpus" of a commercial annuity is paid to an unrelated third party (typically an insurance company) to purchase the annuity. The annuity company then makes payments to the community spouse from a combination of principal and income from that corpus.

Plaintiffs applied for Medicaid benefits during the period that New Jersey was implementing its CSAT policy change. They claim that, during this period, New Jersey delayed in processing their pending Medicaid applications for anywhere between eight and eighteen months. When New Jersey finally determined plaintiffs' eligibility, applying its "new" policy, it deemed their asset levels too high to qualify for Medicaid benefits because it included their CSATs as available assets. Plaintiffs dispute that the corpus of their CSATs should be counted among their assets.

Recognizing the difficulties its policy change caused plaintiffs (who had established CSATs expecting pre-1999 policy to apply), New Jersey advised that it would allow them to replace their CSATs with commercial annuities. As a compromise to plaintiffs, the State would treat these annuities as non-countable (whereas for other Medicaid claimants the State treats commercial annuities as countable), so long as plaintiffs included a state-payback provision in the annuities. Plaintiffs, however, did not accept this settlement.[4]

_____

[4]Plaintiffs argue that they notified New Jersey that they wished to exchange their CSATs for commercial annuities. New Jersey responds that they instructed plaintiffs how to do so, but they declined to follow these instructions and therefore waived this offer of compromise.

4

After New Jersey held their CSATs countable (thereby making them ineligible for Medicaid), plaintiffs sought to prove that New Jersey's denial of benefits would cause them "undue hardship." Under federal law, if denial of Medicaid benefits to a claimant causes undue hardship, the state must provide benefits, even though the claimant would otherwise not be so entitled. Federal law requires states to establish hearing procedures by which individuals can present their undue hardship claims. But at that time New Jersey had not promulgated these procedures, leaving plaintiffs without any administrative avenue for undue hardship relief.

As a result of these circumstances, plaintiffs filed suit in the District Court. They challenged, *inter alia*, New Jersey's determination that their CSATs are countable resources, the state-payback requirement for CSATs deemed not countable, and New Jersey's failure to promulgate procedures for undue hardship hearings required by federal law. The District Court (per Judge Bassler) denied relief and dismissed certain of their claims (though both actions were without prejudice in part). First, it held plaintiffs' CSATs countable under federal law. Second, although the Court believed that New Jersey's state-payback requirement violates federal law by imposing Medicaid eligibility criteria more stringent than those imposed by the Medicaid Act (*i.e.*, that Medicaid claimants with CSATs name New Jersey first beneficiary, when federal law

imposes no such requirement), the Court saw no risk of irreparable harm because New Jersey ceased to require state paybacks for CSATs post-1999 when it began to deem CSATs countable assets. Finally, the Court confirmed that plaintiffs must be afforded an opportunity for an undue hardship hearing (and that New Jersey had failed to promulgate procedures for such a hearing). However, because New Jersey conceded its obligation and had committed to promulgating regulations for hearings, the Court held that its failure to do so thus far posed no risk of irreparable harm. Judge Bassler left open the possibility that plaintiffs could return to federal court if New Jersey failed to implement its promised procedures.

In the meantime, despite the absence of officially promulgated procedures, New Jersey offered plaintiffs the opportunity to plead undue hardship in conformity with federally mandated standards. The State sent "amended" denial letters to plaintiffs in December 1999 notifying them of their right to apply for an undue hardship exception. Plaintiffs declined to do so, however.[5]

---

[5]Plaintiffs' counsel asked New Jersey by letter on January 11, 2000 to "send . . . the undue hardship policy provision contained in the New Jersey State Medicaid Plan" that implements the federal mandate to afford undue hardship hearings. He said that, "[u]pon receipt of

5

In 2001, New Jersey's undue-hardship regulations became effective. Plaintiffs believe those regulations are inadequate, however, because they fail to specify a time in which the State must hold a hearing, thereby violating a federal Medicaid regulation requiring a "timely process for determining whether an undue hardship waiver will be granted." Health Care Financing Administration (now Centers for Medicare & Medicaid Services)("HCFA") Transmittal No. 64 § 3259.8C.

Plaintiffs returned to the District Court. This time the Court (with Judge Cavanaugh now presiding) denied their motion for, *inter alia*, injunctive relief and dismissed their complaint. It again held plaintiffs' CSATs countable in determining Medicaid eligibility. It also rejected their argument that, because New Jersey unduly delayed in

_____

that information, my clients will file the undue hardship request." As noted, New Jersey had no formal procedures in place at that time, but rather was attempting to accommodate plaintiffs' complaint by providing *ad hoc* procedures that would comply with federal law. Thus New Jersey had nothing to send plaintiffs. Plaintiffs – presumably because they did not receive the then-nonexistent provisions – never provided New Jersey with the information necessary to determine whether they were entitled to an undue hardship exception.

determining their eligibility, it should be equitably estopped from applying its new CSAT countability policy to plaintiffs. The Court reasoned that equitable estoppel will rarely lie against governmental entities. Moreover, Judge Cavanaugh rejected plaintiffs' state-payback argument, though for different reasons than did Judge Bassler. Judge Cavanaugh found no evidence that New Jersey any longer requires state paybacks for CSATs. However, in disagreement with Judge Bassler, Judge Cavanaugh held that state paybacks are consistent with federal policy disfavoring Medicaid claimants' attempts to shelter assets and thus do not violate federal law. Finally, the Court disagreed with plaintiffs that New Jersey's newly promulgated undue hardship hearing provisions were deficient for their failure explicitly to provide a time frame in which a hearing must be conducted. Rather, it held that the State had "substantially complied" with federal law's mandate to provide for undue hardship hearing procedures.

Plaintiffs appeal Judge Cavanaugh's dismissal of their complaint.[6] They raise essentially five issues for our review[7]: (1) whether

_____

[6]The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

[7]These are questions of statutory interpretation, over which we exercise

CSATs are countable assets for Medicaid eligibility purposes; (2) whether in any event New Jersey should be estopped from treating plaintiffs' CSATs as countable assets because they delayed unduly in determining plaintiffs' Medicaid eligibility (or alternatively whether the District Court should hold a hearing on plaintiffs' estoppel claim); (3) whether New Jersey's state-payback requirement pre-1999 for CSATs violates federal law; (4) whether New Jersey's state-payback requirement for the commercial annuity option offered to plaintiffs violates federal law; and (5) whether the undue hardship regulations of New Jersey violate federal law by failing explicitly to provide a time by which it must hold a hearing. Plaintiffs also seek attorneys' fees.

## II. Discussion

### A. Countability of CSATs

New Jersey deemed plaintiffs ineligible for Medicaid benefits because, when the capital in their CSATs was taken into account, they had assets exceeding a level qualifying them for Medicaid. Plaintiffs argue that New Jersey should not have considered their CSATs as countable assets.

---

plenary review. *Moody v. Sec. Pac. Bus. Credit, Inc.*, 971 F.2d 1056, 1063 (3d Cir. 1992).

As this is a question of statutory interpretation,[8] we begin (and end) our inquiry with the relevant statute, 42 U.S.C. § 1396p(d)(3)(B). That provision provides, in subsection (i), that "[i]n the case of an irrevocable trust -- if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual [the institutionalized spouse whose assets are used to establish the trust], the portion of the corpus from which, or the income on the corpus from which, payment to the individual could be made shall be considered resources available to the individual . . . ." Both parties agree that CSATs are irrevocable trusts. They are generally funded with marital assets (assets that belong to both spouses). Moreover, CSATs are designed so that the corpus and the income on the corpus will provide the community spouse a stream of payments. Once the community spouse receives these payments, there is nothing preventing her or him from sharing them with the institutionalized spouse as well. Section 1396p(d)(3)(B)(i) thus squarely covers

---

[8]We note that there is some question "whether third parties may sue to enforce Spending Clause legislation [such as provisions of the Medicaid Act]." *Pharmaceutical Research & Mfrs. of Am. v. Walsh*, 123 S. Ct. 1855, 1878 (2003) (Thomas, J., concurring) (citations omitted). However, as neither party raises this issue on appeal, we have no occasion to decide it.

CSATs – as "circumstances [exist] under which payment from the trust could be made to or for the benefit of" the institutionalized spouse – and deems them countable resources.[9]  Accordingly,

we affirm the District Court ruling that plaintiffs' CSAT assets are countable resources.

## B.  Equitable Estoppel

Plaintiffs argue that New Jersey "stalled" their Medicaid applications for eight to eighteen months to allow the State to make a "policy change" regarding CSATs' countability.  As a result, plaintiffs assert that we should equitably estop New Jersey from attempting to apply its new CSAT countability rule to plaintiffs or at least order the District Court to hold a hearing and allow discovery on this claim.

We decline to do either. "[E]quitable estoppel will not lie against the Government as it lies against private litigants."  *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 419 (1990).  In *Richmond*, even though a federal employee provided misinformation to the plaintiff (on which he relied to his detriment), the Supreme Court declined equitably to estop the Government.  *Id*. at

---

[9]Indeed, an interpretive letter from an HHS employee supports our analysis. On April 16, 1998, Robert A. Streimer, with the Disabled and Elderly Health Programs Group of HHS's Center for Medicaid and State Operations, wrote to an attorney in Virginia who inquired about the treatment of her client's trust. According to the letter, the Virginia Department of Social Services denied her client Medicaid benefits because, when the trust's corpus was counted as an eligible resource, the client had assets in excess of a Medicaid-qualifying level. Streimer opined that Virginia's determination was correct.  He reasoned that the trust "falls under the jurisdiction of [§ 1396p(d)] if the trust was established by either member of the couple, using at least some of the Medicaid applicant's assets."  Second, because "the trust . . . is an irrevocable trust, the corpus of which can be paid at some point in time to the community spouse[,] . . . the corpus . . . is considered as an available resource to the beneficiary, and thus must be included as a countable resource in determining Medicaid eligibility for the institutionalized spouse."   The Streimer letter went on to draw a distinction between irrevocable (private) trusts and commercial annuities, suggesting that

commercial annuities would *not* be countable resources.  Because, as will be discussed below, the countability of commercial annuities is not a question raised in plaintiffs' complaint, we need not decide whether the Streimer letter's position on the countability of commercial annuities – a position conflicting with New Jersey's – is correct.

433-34. In a case more than a century before, *The Floyd Acceptances*, the Court similarly held that the Government could not be compelled to honor bills of exchange issued by a government official where there was no statutory authority for the issuance of the bills. 74 U.S. 666, 682-83 (1868). An analogous principle applies here: because, as discussed, there is no statutory authority (federal or state) for treating CSAT assets as not countable, New Jersey should not be estopped from treating them as countable. While the *Richmond* Court left open the possibility that some kind of "'affirmative misconduct' might give rise to estoppel against the Government," plaintiffs allege no affirmative misconduct here. *Richmond*, 496 U.S. at 421 (citations omitted). In this context, the District Court was correct in eschewing the estoppel of New Jersey's countability rule.[10]

## C. State-payback requirement for CSATs

Plaintiffs challenge New Jersey's state-payback requirement for CSATs. They argue that no provision of the Medicaid Act allows a state to seek payback from a community spouse's estate. Moreover, because § 1396p requires state payback for other types of trusts, *see* § 1396p(d)(4)(A)-(C),[11] Congress knew how to specify state payback when it wanted; that it did not do so for spousal trusts indicates that it did not intend to permit states to seek payback for CSATs. New Jersey counters that this issue is now moot because it considers CSATs countable and therefore no longer imposes this condition. We agree with New Jersey.

As background, § 1396p(d)(3) instructs states how to treat trusts for Medicaid eligibility purposes. Previously, when New Jersey considered CSATs noncountable, it presumably believed them to be governed by § 1396p(d)(3)(B)(ii), which addresses irrevocable trusts when no income or principal from the trust "could under any circumstances be made to the individual [establishing the trust]." That section provides that these trusts "shall be considered . . . to be assets disposed by the individual for purposes of subsection (c) of this section [imposing a penalty on transfers of assets]." The creation of a CSAT results in a transfer of marital assets to the community spouse. *See* § 1396p(c)(3). Thus, absent some exception, even though a CSAT is noncountable it still is subject to §

---

[10]As there is no need in this case for any hearing (including discovery), the District Court's refusal to conduct a hearing is also affirmed.

[11]The trusts provided for in this section are known as special-needs, "Miller," and pooled trusts, and are not implicated in this case.

9

1396p(c)'s transfer penalty.[12] Section 1396p(c)(2)(B)(i), however, exempts transfers from penalty when made "for the sole benefit of the individual's spouse." In Medicaid parlance, this is known as an "SBO transfer." New Jersey conditioned application of the SBO exception to the § 1396p(c) transfer penalty by defining an SBO transfer to include when the State is named first beneficiary of the trust to the extent of benefits paid on behalf of the institutionalized spouse. N.J. Admin. Code tit. 10, § 71-4.10(f). In layman's language, transfers of assets by the institutionalized spouse for the sole benefit of the community spouse are not penalized for Medicaid eligibility, according to New Jersey, if it has first call on those trust assets equal to the Medicaid benefits it pays to the institutionalized spouse.

Because New Jersey no longer requires state paybacks for CSATs, we have no occasion to decide whether it had the authority to define an SBO transfer in this manner.[13] Thus the state-

payback issue plaintiffs assert is moot with respect to CSATs.

## D. Commercial annuity option offered to plaintiffs

Plaintiffs argue that the commercial annuity option New Jersey offered them – whereby New Jersey would deem commercial annuities noncountable assets so long as they provided for state payback – violates federal law for the same reasons discussed above. New Jersey responds that because plaintiffs did not raise this issue in their complaint (*i.e.*, plaintiffs only raised the issue with respect to CSATs), it is not properly before us.

We agree that plaintiffs take issue too late. Moreover, at oral argument New Jersey made clear that its offer to treat any commercial annuities plaintiffs might purchase as noncountable (so long

---

[12]The "transfer penalty" is a period of ineligibility for Medicaid benefits.

[13]Although § 71-4.10(f) is no longer applied by New Jersey with respect to CSATs, it apparently is still in effect, and thus presumably contemplates state paybacks in non-CSAT contexts. We also note in this regard that HHS has taken a position (in the context

of a commercial annuity) contrary to New Jersey's view that SBO transfers can include it as a beneficiary. See letter dated September 26, 2002, from Thomas E. Hamilton, Director of the Disabled and Elderly Health Programs Group of HHS's Centers for Medicare and Medicaid Services, to Donald M. McHugh, Esq. (one of plaintiffs' counsel in this case). Interestingly, the Hamilton letter, notwithstanding § 71-4.10(f), refers to New Jersey's interpretation as a "policy, rather than state statute or regulation."

10

as they named New Jersey as first beneficiary) was intended to be a settlement available to the plaintiffs, not a policy generally applicable to all Medicaid claimants. New Jersey need not have offered this compromise to plaintiffs, and instead could have chosen to treat countable assets in any annuities (whether private or commercial) plaintiffs purchased. Regardless, plaintiffs rejected this settlement, and New Jersey tells us it is no longer on the table. Thus, not only was this issue not properly pled, it is moot as well.

## E. Undue Hardship Hearing

Section 1396p(d)(5) requires states to afford otherwise ineligible claimants Medicaid benefits if "undue hardship" would result from the failure to provide benefits.[14] The relevant Medicaid regulation, § 3259.8 of HCFA Transmittal No. 64, sets standards for states to apply in making "undue

---

[14]42 U.S.C. § 1396p(d)(5) provides that "[t]he State agency [responsible for administering Medicaid] shall establish procedures (in accordance with standards specified by the Secretary) under which the agency waives the application of this subsection [relating to "[t]reatment of trust amounts"] with respect to an individual if the individual establishes that such application would work an undue hardship on the individual as determined on the basis of criteria established by the Secretary."

hardship" determinations. Section 3259.8A provides that "[u]ndue hardship exists when application of the trust provisions would deprive the individual of medical care such that his/her health or his/her life would be endangered [or] when application of the trust provisions would deprive the individual of food, clothing, shelter, or other necessities of life." While states have "considerable flexibility in deciding the circumstances under which [they] will not count funds in trusts . . . because of undue hardship," the regulation requires that states, "at a minimum, provide for: [1] [n]otice to recipients that an undue hardship exception exists; [2] [a] timely process for determining whether an undue hardship waiver will be granted; [and] [3] [a] process under which an adverse determination can be appealed." § 3259.8C. Moreover, a state's "undue hardship provision must discuss how [the state] will meet these requirements." *Id.*

Plaintiffs' arguments have necessarily shifted through the course of this case because, before seeking relief initially in the District Court, New Jersey had not promulgated procedures under which Medicaid claimants could seek undue hardship hearings in accordance with § 1396p(d)(5) of the Medicaid Act and § 3259.8 of Transmittal No. 64. However, after the hearing before Judge Bassler, New Jersey implemented the long-promised undue hardship regulations. *See* N.J. Admin. Code tit. 10, § 71:4.11(i). According to plaintiffs, however, New Jersey's regulations do

not fully comply with federal law. They argued before Judge Cavanaugh – and now before us – that New Jersey's regulations do not specify within what time period the State will afford an undue hardship hearing and thus do not "discuss how [New Jersey] will meet" Transmittal No. 64's "timely process" requirement. This failure, plaintiffs argue, violates federal law.

New Jersey responds that plaintiffs are without standing to complain about the lack of an explicit timeliness clause in its regulation because plaintiffs have not availed themselves of the offered undue hardship remedy and thus have suffered no injury as a result of the lack of an explicit timeliness provision in § 71:4.11(i). On the merits, New Jersey also argues that neither § 1396p(d)(5) nor § 3259.8 of Transmittal No. 64 requires states to include an express timeliness provision.

We agree with New Jersey that plaintiffs lack standing because they have suffered no injury related to § 71:4.11(i)'s lack of an explicit timeliness provision. Plaintiffs conceded both in their brief and at oral argument that New Jersey notified them of their right to an undue hardship hearing in December 1999 and required them to submit "the reasons and all documentation that you believe gives rise to an undue hardship . . . to the county welfare agency within 20 day[s] of this letter." While these notices were sent out before New Jersey's undue hardship regulations became effective in

2001, this chronology is irrelevant.[15] What *is* important is that (the lack of formal regulations notwithstanding) New Jersey offered plaintiffs the opportunity to apply for an undue hardship hearing, as federal law requires. For whatever reason, plaintiffs chose not to seek a hearing for undue hardship at that time. Thus they have suffered no injury (and indeed have no basis to believe that New Jersey would not have timely processed their request).[16] As a consequence, plaintiffs are without standing.

**F.  Attorneys' fees**

Because plaintiffs have not received a favorable judgment on any of their claims – either in the District Court

_____

[15]We recognize that plaintiffs could not receive an undue hardship hearing under § 71-4.11(i) today. This provision requires claimants to apply for an undue hardship waiver "within 20 days of notification of the denial of eligibility or termination of benefits," a period long-passed. But as discussed, New Jersey offered plaintiffs the opportunity to seek an undue hardship hearing in December 1999. Having done so, it followed federal law.

[16]Had plaintiffs sought a hearing, and had New Jersey delayed unduly in providing them a hearing or otherwise not complied with federal standards for such a hearing, they would have had standing.

12

or here – they are not entitled to attorneys' fees. *Cf. Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 600 (2001) (party that failed to win on the merits by judgment or consent decree, yet obtained result it sought by defendant's voluntary change, is not a prevailing party entitled to attorney's fees and costs).

* * * * * * * * * * * *

We hold that CSATs are countable resources for Medicaid eligibility purposes and decline (a) to estop New Jersey from treating plaintiffs' CSAT assets as countable or (b) to require the District Court to hold a hearing on the issue. Moreover, we hold that plaintiffs' claims with respect to state paybacks are moot both as to CSATs and commercial annuities, and they are without standing to attack New Jersey's undue hardship regulations. Finally, because plaintiffs do not prevail on the merits, they have no claim for attorneys' fees.

13