865 A.2d 701 (2005)
374 N.J. Super. 460
A.B., Petitioner-Appellant,
v.
DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES and Passaic County Board of Social Services, Respondents-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued November 30, 2004.
Decided January 21, 2005.
*702 Donald McHugh, East Hanover, argued the cause for appellant (McHugh & Macri, attorneys; Mr. McHugh, on the brief).
Caitlin L. Aviss, Deputy Attorney General, argued the cause for respondents (Peter C. Harvey, Attorney General, attorney; Michael J. Hass, Assistant Attorney General, of counsel; Ms. Aviss, on the brief).
Before Judges STERN, COBURN and S.L. REISNER.
The opinion of the court was delivered by
S.L. REISNER, J.A.D.
A.B. appeals from a final determination of the Director of the Division of Medical Assistance and Health Services (DMAHS) denying her Medicaid benefits because her husband refused to name the State of New Jersey as first remainder beneficiary on his commercial annuity. The parties stipulated that the annuity was purchased to provide income to the husband and that it was not purchased for the purpose of enabling *703 A.B. to qualify for Medicaid benefits. We reverse.

I
The parties stipulated to the following material facts:
1. The applicant, A.B., was permanently institutionalized on April 26, 2000, at the Chestnut Hill Convalescent Center in Passaic, New Jersey.
2. The applicant and her husband, Ar.B., have been married for sixty years as of the date of institutionalization.
3. At the time of the filing of the Medicaid application, [in December 1999], the applicant maintained that the sole spousal asset was the balance in a joint checking account... with an approximate balance of $17,000.
4. In November 1998, Ar.B. purchased an annuity ... with monthly interest payouts wherein he was the owner and annuitant and the daughter of their marriage ... was the beneficiary upon death. On or about August 31, 2000, that annuity was exchanged for another immediate annuity at a higher interest rate ... for the then outstanding balance of $77,485.15. The monthly payments now in the amount of $1,441.22 to Ar.B. continued.
5. The parties to this action have stipulated that the annuity purchased in 1998 and exchanged in 2000 was not for the purpose of achieving Medicaid eligibility but rather to provide income to the couple, and that there is no transfer of assets issue applicable to this case.
6. [The Passaic County Board of Social Services] confirms that the applicant has submitted sufficient documentation to achieve Medicaid eligibility at the county level, but the denial is based solely on the DMAHS requirement that to accept the annuity as a non-countable asset, it must name the State of New Jersey as the first remainder beneficiary.
It is also undisputed that the annuity in question is a standard, fixed-term commercial annuity. At oral argument, all counsel stipulated that the annuity is actuarially sound.

II
After her Medicaid application was denied on February 15, 2001, A.B. requested a fair hearing, maintaining that the annuity should not be counted as a spousal asset, and therefore there was no basis to require that the State be listed as a beneficiary on the annuity. Following a hearing on June 11, 2001, conducted on stipulated facts and oral argument, Administrative Law Judge Giordano issued an initial decision on January 18, 2002, in which he concluded that the requirement was unenforceable because it was not adopted as a rule; he recommended a remand to the County Board for a determination of whether the annuity was actuarially sound and therefore could be deemed to be for the sole benefit of the spouse. The Acting Director of DMAHS issued a final decision in April 2002 remanding the matter to the ALJ for further findings regarding the effect of the United States District Court opinion in Johnson v. Guhl, 166 F.Supp.2d 42 (D.N.J.2001) aff'd, 357 F.3d 403 (3d Cir.2004),[1] and a November 9, 2000 letter from Thomas E. Hamilton of the Federal Center for Medicare and Medicaid Services (CMS), regarding the valuation of annuities for purposes of Medicaid eligibility.
Prior to the hearing on remand, A.B.'s counsel made an inquiry to the CMS concerning *704 the State payback policy. In a letter dated September 26, 2002, responding to that inquiry, Thomas E. Hamilton, Director of the CMS Disabled and Elderly Health Programs Group, opined that, apart from three specific types of trusts not applicable here, "[t]here are no other instances in which the [Medicaid] statute requires, or authorizes states to require, the Medicaid program to be named as the primary remainder beneficiary of a financial instrument such as a trust or annuity." The letter further advised that so long as an annuity "provide[s] for payment of the entire value of the annuity, plus interest, to the beneficiary (i.e., the community spouse) within that person's expected lifetime[,]" the annuity is deemed to be for the sole benefit of the community spouse, even if the annuity names a remainder beneficiary. The letter concludes that
we must agree with the Administrative Law Judge's [January 2002] ruling that there is no authority under federal statute or operating policy that would provide a basis for New Jersey's requiring, purely as a matter of policy, that the State be named the primary remainder beneficiary in annuities which are factors in applications for Medicaid.... [T]he language in the November 9 [, 2000] letter cited previously does not give the State authority to adopt such a policy.
On December 13, 2002, ALJ Giordano issued an initial decision in which he concluded that neither the Johnson decision nor the November 9, 2000, Hamilton letter impacted the commercial annuity in question. In addition, the ALJ again found that the payback requirement was without legal authority and, therefore, unenforceable.
The DMAHS Director issued a final agency decision on April 22, 2003, determining that CMS's policy on commercial annuities, as expressed in the Hamilton letters referenced by the ALJ, was unsupported by the federal statute, congressional intent and CMS's own definition of the term "sole benefit," and therefore was not entitled to deference. The Director also asserted that the annuities should be considered as a resource because there is a "secondary market" in which the owner of the annuity can sell the value of the income stream produced by the annuity. Based on these findings, the Director concluded that A.B. was ineligible for Medicaid benefits.
The following procedural developments are also relevant to this appeal. On June 18, 2001, the DMAHS adopted regulations formalizing its policy concerning commercial annuities. The regulations define a commercial annuity purchased for the benefit of the community spouse as a "resource" that must be counted in determining the applicant's Medicaid eligibility, to the extent that the purchase price of the annuity exceeds the community spouse resource allowance (CSRA). N.J.A.C. 10:71-4.10(p)2i. The regulations also require that the State of New Jersey be named as the first remainder beneficiary on commercial annuities purchased for the benefit of the community spouse. N.J.A.C. 10:71-4.10(b)(8) and -4.10(f).
During the pendency of this appeal, the parties also brought to our attention additional letters from the CMS addressing commercial annuities. An October 20, 2003 letter from Glenn A. Stanton of CMS responded to a letter from DMAHS in which DMAHS asserted that annuities should be considered as countable resources because, according to DMAHS, they could be sold. Stanton's letter advised that "if an annuity can be sold" its fair market value would be countable as a resource. A March 8, 2004 letter from Stanton to A.B.'s counsel clarified that *705 "the assets used to purchase the [irrevocable commercial] annuity are themselves no longer an available resource. However, if the annuity contract or right to receive future income can be sold for a lump sum, the fair market value of the annuity contract would be considered an available resource...." The letter also noted that "whether a particular annuity can be converted to cash would be a question of fact to be determined on a case-by-case basis."

III
Our decision in this case follows directly from Estate of F.K. v. Division of Medical Assistance and Health Services, 374 N.J.Super. 126, 146, 863 A.2d 1065 (App.Div.2004), an opinion with which we completely agree. That opinion contains an extensive and thorough discussion of the history, purpose, terminology, and construction of the Medicaid Act, 42 U.S.C.A. §§ 1396 to 1396v, which we incorporate here by reference. Id. at 133-37, 863 A.2d 1065. This opinion is intended to be read in conjunction with Estate of F.K. For the sake of emphasis, we add only that due to the extraordinary complexity of the Medicaid Act, Congress delegated to the CMS broad authority to define eligibility requirements for Medicaid. Schweiker v. Gray Panthers, 453 U.S. 34, 43, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460, 469-70 (1981). Consequently, letters from the CMS interpreting the Medicaid Act are given judicial deference so long as those interpretations are "consistent with prior agency pronouncements" and with the plain language and purpose of the Act. Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124, 129 (1944); Estate of F.K., supra, 374 N.J.Super. at 141-42, 863 A.2d 1065.
In Estate of F.K., we held that N.J.A.C. 10:71-4.10(p)2i was invalid because it was inconsistent with the Medicaid Act, as interpreted by the CMS. Id. at 146, 863 A.2d 1065. Thus, the State cannot consider as an available resource an actuarially sound commercial annuity purchased for the benefit of the community spouse, even if the annuity was purchased with an amount greater than the CSRA. Id. at 145, 863 A.2d 1065. Estate of F.K. also held that the State could not deem the re-sale value of such an annuity to be an available resource, because the record was devoid of any evidence of such a secondary market. Id. at 146, 863 A.2d 1065. The Estate of F.K. decision determines the outcome of this appeal.
In this case, the State disqualified A.B. for Medicaid benefits because her husband purchased a commercial annuity for an amount greater than the CSRA. The parties stipulated that the annuity was actuarially sound and was not purchased for purposes of qualifying A.B. for Medicaid; rather it was purchased to provide her husband with an income stream. The couple's daughter was designated as the remainder beneficiary. The State applied a policy that it would count the annuity as an available resource unless the State was designated as the remainder beneficiary. The policy was intended to permit the State, as remainder beneficiary on the annuity, to eventually recoup some of the Medicaid benefits paid to the institutionalized spouse. This policy was later codified in a regulation, N.J.A.C. 10:71-4.10(b)(8) and -4.10(f). The couple refused to change the remainder beneficiary, and the State denied Medicaid benefits.
The State defends the policy as essentially a form of leniency, permitting a Medicaid applicant to keep the benefit of an annuity for the community spouse when the annuity would otherwise have to be considered as a community resource. However, as we held in Estate of F.K., the State cannot deem the amount used to *706 purchase such an annuity as a community resource, even if the purchase price exceeds the CSRA. Id. at 146, 863 A.2d 1065. If the State cannot lawfully consider the annuity as a community resource, then there is no justification for requiring the community spouse to designate the State as remainder beneficiary as a condition of having the annuity.
The State's second rationale, that the income stream from such a commercial annuity has a resale value in the secondary market, is equally unavailing. As in Estate of F.K., supra, 374 N.J.Super. at 146, 863 A.2d 1065, there is no legally competent evidence in the record that there is a resale market for the income stream from these annuities. In fact, the issue of a possible resale market for Ar.B.'s annuity was not even raised at either hearing before ALJ Giordano. We cannot defer to the agency's factual finding of a secondary market when the issue was not raised at the hearings, no evidence was produced to support such a contention, and A.B. had no opportunity to produce contrary evidence. The agency's determination is therefore unsustainable. Id.
We find the agency's reliance on the October 20, 2003 CMS letter unpersuasive. As in Estate of F.K., we conclude that the letter is entitled to little if any deference because of its guarded wording and because it responded to an inquiry which assumed the conclusion that a resale market existed. Id. at 142, 863 A.2d 1065. We also note that a subsequent letter from CMS to A.B.'s attorney, dated March 8, 2004, reiterates the CMS position that the purchase price of an actuarially sound commercial annuity (as opposed to the secondary market value, if any, of the income stream) is not an available resource. That letter also advises that whether a particular annuity has a resale value is a question of fact. The March 8, 2004 CMS letter is entitled to deference, as it cogently explains the agency's consistent position concerning the proper treatment of these annuities. See Id.; Cleary v. Waldman, 167 F.3d 801, 808 (3d Cir.), cert. denied, 528 U.S. 870, 120 S.Ct. 170, 145 L.Ed.2d 144 (1999).
As in Estate of F.K., supra, 374 N.J.Super. at 146, 863 A.2d 1065, DMAHS has produced no evidence that a secondary market exists for the type of commercial annuity involved in this case. And even if there were legally competent evidence of a secondary market, the agency produced no proof of the resale value of Ar.B.'s annuity. That annuity was purchased for approximately $77,000. However, the resale value of an income stream payable to an elderly annuitant during his anticipated remaining lifetime would certainly not be $77,000. It might be a few cents on the dollar. Absent proof of the resale value, if any, of the income stream from the annuity, the agency could not conclude that A.B.'s spouse had assets beyond those allowed to the community spouse.

IV
In summary, we conclude that since the Federal Medicaid Act prohibits the State from treating an actuarially sound commercial annuity as an available resource of the community spouse, the State may not require that it be named as the remainder beneficiary of such an annuity. The State cannot implement such a requirement either as an informal policy or as a regulation. Therefore, N.J.A.C. 10:71-4.10(b)(8) and -4.10(f) cannot be applied to actuarially sound commercial annuities purchased to provide an income stream to the community spouse. The determination denying A.B.'s application for Medicaid benefits is reversed.[2]
Reversed.
NOTES
[1] Johnson v. Guhl addressed certain types of spousal trusts but did not address commercial annuities. Id. at 44; see also Johnson, 357 F.3d at 406.
[2] A.B. seeks counsel fees pursuant to 42 U.S.C.A. § 1983, based on a contention that the DMAHS policy violated her rights under the Equal Protection Clause of the United States Constitution. U.S. Const. amend. XIV, ¶ 1. This argument is without merit and does not warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Further we find no evidence in the record before us that either the constitutional issue or the attorney fee claim were raised or even noted in the administrative proceedings below.