920 A.2d 707

J.P., PETITIONER–APPELLANT, v. DIVISION OF MEDICAL ASSIS-
TANCE AND HEALTH SERVICES, RESPONDENT–RESPON-
DENT, AND MIDDLESEX COUNTY BOARD OF SOCIAL SER-
VICES, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 26, 2007—Decided April 19, 2007.

Before Judges S.L. REISNER, SELTZER and KING.

*Eugene Rosner,* argued the cause for appellant (*Fink Rosner Ershow–Levenberg,* attorneys; *Mr. Rosner,* on the brief).

*Zoé J. McLaughlin,* Deputy Attorney General, argued the cause for respondent Division of Medical Assistance and Health Services (*Stuart Rabner,* Attorney General, attorney; *Patrick DeAlmeida,* Assistant Attorney General, of counsel; *Ms. McLaughlin,* on the brief).

The opinion of the court was delivered by

S.L. REISNER, J.A.D.

In this case, we consider whether alimony constitutes income received by a Medicaid recipient, where the alimony is paid to a special needs trust created pursuant to a Family Part order as part of divorce proceedings. We conclude it does not. Therefore, the State Medicaid program cannot reduce its contribution to the recipient's nursing home costs by the amount of alimony her ex-husband pays to the special needs trust.

## I

Due to a severe physical disability, petitioner J.P. has been living in a nursing home since November 14, 2000. At the time of the hearing in this matter, she was forty-eight years old. J.P. was

approved for Medicaid benefits under the "Medicaid Only Program," effective February 1, 2001. Under the "medically needy" Medicaid nursing home program, J.P. was required to use her income, consisting of her monthly social security benefits, to pay for her nursing home care, and Medicaid paid for the amount not covered by her income.[1] J.P. was married at the time she qualified for Medicaid, and there is no dispute that her husband was not required to make any contribution to her nursing home care.

J.P.'s husband filed a divorce complaint on May 27, 2003. As part of the divorce proceedings, J.P. applied to the Family Part for the creation of a supplemental needs trust.[2] In her certification in support of the application, J.P. explained her need for supplemental financial support to improve her quality of life:

Despite my physical limitations, I am capable of enjoying an enhanced quality of life if I had the funds to support activities and allow for purchases which would allow me to enrich the quality of my life in [the nursing home] and to actively participate in parenting responsibilities and my daughter's activities.

Many of the residents at [the nursing home] are elderly and have various forms of dementia which severely limits my ability to socialize. My only opportunities for socialization are visits from my family and trips away from [the nursing home].

I would be capable of enjoying such activities as going to a movie, to a theater, shopping at a mall or simply eating out at a restaurant or a family member's home on occasion ...

In addition to the examples of the kinds of "quality of life" expenses noted, I need a source of funds to permit me to share parenting responsibilities with the plaintiff and permit me to attend some of my daughter's school and extracurricular activities and to enjoy time with her away from the nursing home.

---

[1] The "medically needy" program is described in detail in *Mistrick v. Div. of Med. Assistance & Health Servs.*, 154 *N.J.* 158, 166–68, 712 *A.2d* 188 (1998); *see also L.M. v. Div. of Med. Assistance & Health Servs.*, 140 *N.J.* 480, 486–88, 659 *A.2d* 450 (1995).

[2] In this opinion, the terms "special needs trust" and "supplemental needs trust" are used interchangeably. They are also known as "OBRA '93 trusts," named after the Omnibus Budget Reconciliation Act of 1993 (OBRA '93), which permitted the creation of special needs trusts as a form of Medicaid planning. *See* 42 *U.S.C.A.* § 1396p(d)(4)(A); *N.J.S.A.* 3B:11–37a.

The Family Part judge ordered that a supplemental needs trust be established for J.P.'s benefit, specifically to protect J.P.'s continued eligibility for Medicaid. The Division of Medical Assistance and Health Services (DMAHS or Division) and the local Board of Social Services received notice of the application to create the trust. DMAHS sent the court a letter declining to participate in the case. The Board of Social Services did not participate in the case either, but sent J.P.'s counsel a letter offering advice on how to set up the trust. The letter also advised that while resources could be placed in the trust without jeopardizing J.P.'s Medicaid eligibility, income such as alimony could not.

There is no dispute that the terms of the trust met the requirements of the Federal Medicaid statute, 42 *U.S.C.A.* § 1396p(d)(4)(A). In that section, Congress specifically permitted a Medicaid recipient to shield certain funds from consideration for his or her Medicaid eligibility by creating a supplemental needs trust, provided that after the recipient dies any remaining funds in the trust are paid to the State "up to an amount equal to the total medical assistance paid on behalf of the individual." 42 *U.S.C.A.* § 1396p(d)(4)(A).

After the supplemental needs trust was created, J.P. and her husband negotiated a Spousal Agreement, which was incorporated in the judgment of divorce dated September 27, 2004. The agreement required J.P.'s husband to pay the trust equitable distribution of $32,669 plus one half the net proceeds from the sale of real estate, and required him to pay $1550 per month in alimony to the trust. Thereafter, however, the Middlesex County Board of Social Services notified J.P. that the alimony paid to the trust was considered to be her income, pursuant to *N.J.A.C.* 10:71–5.4(a), which defines alimony as "actually received" income that must be counted for Medicaid purposes. Therefore, the Board contended that the alimony must be paid to the nursing home.

Following a hearing, an administrative law judge determined that the alimony was not J.P.'s income for Medicaid purposes, because the trust received the income and J.P. had no legal right

to receive it. DMAHS rejected the initial decision, concluding that the alimony was income to J.P. In support of that conclusion, the Division cited a provision of the property agreement making "alimony received by the Wife ... taxable income to her and deductible to the Husband." The Division also concluded that the trust was a "Miller trust," a type of income trust that is only recognized in states which, unlike New Jersey, have not adopted the medically needy nursing home program. The Division also relied on the State Medicaid Manual (S.M.M.), which it construed as differentiating between resources, which may be placed in a supplemental needs trust without affecting eligibility, and income, which may not. *S.M.M.* § 3259.7B1; *S.M.M.* § 3259.7C.

At oral argument, the Division's counsel agreed that funds placed in the trust as equitable distribution would not affect the amount of Medicaid to which J.P. was entitled; accordingly, if J.P. and her ex-husband were to return to the Family Part and re-cast his entire financial obligation to the trust as equitable distribution rather than alimony, J.P. would remain eligible for Medicaid benefits with no reduction for amounts paid to the trust.

## II

We begin our analysis with several pragmatic observations. First, Congress has chosen to permit Medicaid applicants and recipients to shield certain assets and still receive benefits for nursing home care. These planning devices include supplemental needs trusts. 42 *U.S.C.A.* § 1396p(d)(4)(a). There is nothing nefarious in an applicant's taking advantage of Medicaid planning opportunities that Congress has approved. *See W.T. v. Div. of Med. Assistance & Health Servs.*, 391 *N.J.Super.* 25, 37–38, 916 *A.*2d 1066 (App.Div.2007). *See also In re Keri*, 181 *N.J.* 50, 69, 853 *A.*2d 909 (2004). Second, in this case the property settlement agreement was not a pretext to reduce or avoid J.P.'s or her husband's existing obligations to pay for her nursing home care. *Cf. H.K. v. Div. of Med. Assistance & Health Servs.*, 379 *N.J.Super.* 321, 323–27, 878 *A.*2d 16 (App.Div.), *certif. denied*, 185 *N.J.*

393, 886 *A.2d* 663 (2005). Since 2000, J.P. had been paying her social security benefits to the nursing home and her husband had been paying nothing; Medicaid had been paying the balance of the nursing home bill. But for the divorce, neither J.P. nor her husband would have been obligated to pay a penny more for her care than J.P. was already paying. And finally, the DMAHS determination undermines the purpose of the Family Part order, to ensure that J.P. would obtain some financial benefit from the divorce. *See W.T., supra,* 391 *N.J.Super.* at 41, 916 *A.2d* 1066.

Against this backdrop, we consider the parties' legal contentions.

■ The Federal Medicaid statute, 42 *U.S.C.A.* § 1396p(d)(1), counts for purposes of "an individual's eligibility for, or amount of, benefits under a State plan," assets placed in a "trust established by such individual." However, subsection (d)(1) recognizes an exception for supplemental needs trusts created pursuant to 42 *U.S.C.A.* § 1396p(d)(4). Section (d)(4) defines two different types of trusts that may be created for a disabled person. These trusts are described in subsections (A) and (B):

(4) This subsection shall not apply to any of the following trusts:

(A) A trust containing the assets of an individual under age 65 who is disabled ... and which is established for the benefit of such individual by a parent, grandparent, legal guardian of the individual, or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter.

(B) A trust established in a State for the benefit of an individual if—

(i) the trust is composed only of pension, Social Security, and other income to the individual (and accumulated income in the trust),

(ii) the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter, and

(iii) the State makes medical assistance available to individuals described in section 1396a(a)(10)(A)(ii)(V) of this title, but does not make such assistance available to individuals for nursing facility services under section 1396a(a)(10)(C) of this title.

[42 *U.S.C.A.* § 1396p(d)(4).]

Section (B), which permits Miller trusts,[3] does not apply in New Jersey, because New Jersey has adopted the medically needy nursing home Medicaid program. *See N.J.S.A.* 30:4D–3i(8). Only section (A) applies to New Jersey's Medicaid program.

Following adoption of the federal statute, our Legislature adopted special needs trust legislation, *N.J.S.A.* 3B:11–37, which, like the federal law, was intended to assist persons with severe disabilities. The Legislature declared the purpose of the law as follows:

> a. It is in the public interest to encourage persons to set aside amounts to supplement and augment assistance provided by government entities to persons with severe chronic disabilities;
>
> b. By enacting section 13611 of the federal Omnibus Budget Reconciliation Act of 1993, 42 *U.S.C.* s.1396p(d)(4), the United States Congress affirmed this view by permitting the establishment of a trust to supplement and augment assistance for a person who is disabled without disqualifying that person from benefits under the Medicaid program;
>
> c. In some instances, trusts must be established by a court in order to comply with the provisions of 42 *U.S.C.* s.1396p(d)(4);
>
> d. However, the current law in New Jersey does not specifically authorize the establishment of these trusts and subsection f. of section 6 of *P.L.* 1968, *c.* 413 (C. 30:4D–6) may be construed as impeding their establishment; and
>
> e. Therefore, legislation is appropriate to facilitate the establishment of trusts to supplement and augment assistance provided by government entities to persons with severe chronic disabilities and persons who are disabled under the federal Social Security Act.
>
> [*N.J.S.A.* 3B:11–36.]

DMAHS regulations implement the State statute by permitting creation of special needs trusts. *N.J.A.C.* 10:71–4.11(g)1. Consistent with federal and state law, the DMAHS Medicaid regulations

---

[3] Named after *Miller v. Ibarra*, 746 *F.Supp.* 19 (D.Colo.1990), Miller trusts permit individuals to qualify for Medicaid benefits in states that have income caps for Medicaid eligibility. Individuals in those states can assign income to a Miller trust in order to avoid having the income counted against the cap. *See L.M. v. Div. of Med. Assistance & Health Servs.*, 140 *N.J.* 480, 484–89, 659 *A.2d* 450 (1995) (discussing this State's then-existing income cap program and the use of Miller trusts). Once New Jersey ceased to use the income cap approach, and instead adopted the medically needy Medicaid program, DMAHS prohibited the use of Miller trusts to shelter income. *See N.J.A.C.* 10:71–4.11(h).

count trust monies as income or resources of the Medicaid applicant or recipient *unless* they meet the following requirements:

> (g) The trust provisions shall not apply to the following trusts so long as the trust document meets all the requirements set forth in this chapter:
>
> 1. A special needs trust, that is, a trust containing the assets of a disabled individual and which is established prior to the time the disabled individual reaches the age of 65 and which is established for the sole benefit of the disabled individual by a parent, grandparent, legal guardian of the disabled individual, or a court, may be excluded from the rules regarding the treatment of a trust. To qualify for the exclusion, the trust shall contain the following provisions:
>
> i. The trust ... shall be identified as an OBRA '93 trust established pursuant to 42 *U.S.C.* § 1396p(d)(4)(A).

[*N.J.A.C.* 10:71–4.11(g).]

The regulations also except from the normal disqualification penalties attendant on transfers of "assets" the transfer of assets to a special needs trust:

> (e) The application of a transfer penalty as set forth in this section shall not apply when:
>
> 1. The assets were transferred to a trust established for the sole benefit of an individual under 65 years of age who is disabled as defined by the Social Security Administration[.]

[*N.J.A.C.* 10:71–4.10(e).]

Section 4.10 defines "assets" as including both income and resources, including those *not* received by the individual because of a court order entered at the individual's behest:

> Assets shall include all income and resources of the individual and of the individual's spouse. Assets shall also include income and resources which the individual or the individual's spouse is entitled to but does not receive because of action or inaction by the individual or the individual's spouse; or by any person, including a court or administrative body with the legal authority to act in place of or on behalf of the individual or the individual's spouse; or any person, including a court or administrative body, acting at the direction of or upon the request of the individual or the individual's spouse.

[*N.J.A.C.* 10:71–4.10(b)(3).]

This regulatory definition of "assets" mirrors the definition found in the Federal Medicaid statute concerning trusts, 42 *U.S.C.A.* § 1396p(e)(1). Consequently, although the state regulations would normally impose a penalty where an individual does not receive "assets" (including income) due to a court order entered at his or her request, this penalty does not apply to assets

transferred to a special needs trust by court order. The state scheme thus mirrors the federal scheme in allowing a disabled person under age sixty-five to shelter "assets" in a special needs trust.

The State, however, relies on a Medicaid regulation concerning the receipt of income in contending that the alimony must be counted as J.P.'s income. This regulation provides:

> (a) Any income which is not specifically excluded under the provisions of *N.J.A.C.* 10:71–5.3 shall be includable in the determination of countable income. Such income shall include, but is not limited to, the following:
>
> . . . .
>
> 5. Support, alimony, and inheritances: Support, alimony, and inheritances, *in the amounts actually received,* shall be included as unearned income. . . .
>
> [*N.J.A.C.* 10:71–5.4(a) (emphasis added).]

J.P. argues that because the alimony payments are received by the trust and never pass through her hands, they are not subject to this provision. In making that argument she relies on *Reames v. Oklahoma,* 411 *F.*3d 1164 (10th Cir.2005), *cert. denied,* —— *U.S.* ——, 126 *S.Ct.* 1436, 164 *L.Ed.*2d 152 (2006). *Reames* recognized that 42 *U.S.C.A.* § 1396p(d)(4)(A) protects assets placed in a special needs trust from both eligibility penalties and Medicaid co-pay obligations, so long as the assets go directly to the trust and do not pass through the hands of the disabled person first. *Id.* at 1170. However, in *Reames,* the plaintiff attempted to assign her Social Security Disability benefits to a special needs trust; the court held that she could not shelter her SSI benefits in this way because federal law precludes assignment of those benefits. *Id.* at 1171–72. Hence, the benefits necessarily passed through the plaintiff's hands before they went into the trust. The court acknowledged, however, that but for this anti-assignment provision of federal law, the plaintiff could have used the trust to shelter this income.[4] *See ibid.* J.P. argues, based on *Reames,* that since the alimony payments go directly to the trust and never

---

[4] In separate litigation, J.P. sought unsuccessfully to shelter her Social Security benefits by assigning them to the special needs trust. She abandoned her appeal in that case.

pass through her hands, they are sheltered and do not need to be used as a Medicaid co-payment.

J.P. also relies on a letter from the Federal Health Care Financing Administration (HCFA), the agency charged by Congress with interpreting the Medicaid statute. This August 4, 1995, letter from Roy R. Trudel, a Senior Analyst in the Office of Beneficiary Services, Medicaid Bureau, explained that "where a trust meets the requirements of one of the exceptions [including a supplemental needs trust,] income placed in that trust is not counted as income to the individual for Medicaid eligibility purposes." Significantly, Trudel also explained that

> the statutory language regarding these exceptions was drafted in such a way that, if other provisions affecting treatment of income and resources were applied to these trusts in a normal manner, the exception would have no effect. In other words other applicable portions of the statute would essentially negate the exceptions.

However, he explained that HCFA had chosen to construe the Medicaid statute so as to give effect to the underlying intent of Congress to give disabled persons the benefit of special needs trusts.

▪ As we have previously recognized, interpretive letters from HCFA (now known as the Center for Medicaid Services or CMS) are entitled to our deference.

> [D]ue to the extraordinary complexity of the Medicaid Act, Congress delegated to the CMS broad authority to define eligibility requirements for Medicaid. *Schweiker v. Gray Panthers,* 453 *U.S.* 34, 43, 101 *S.Ct.* 2633, 2640, 69 *L.Ed.*2d 460, 469–70 (1981). Consequently, letters from the CMS interpreting the Medicaid Act are given judicial deference so long as those interpretations are "consistent with prior agency pronouncements" and with the plain language and purpose of the Act. *Skidmore v. Swift & Co.,* 323 *U.S.* 134, 140, 65 *S.Ct.* 161, 164, 89 *L.Ed.* 124, 129 (1944).
>
> [*A.B. v. Div. of Med. Assistance & Health Servs.,* 374 *N.J.Super.* 460, 465–66, 865 *A.*2d 701 (App.Div.), *certif. denied,* 185 *N.J.* 38, 878 *A.*2d 855 (2005).]

The Trudel letter is consistent with the State Medicaid Manual, HCFA Transmittal 64 § 3259.7B1, which explains that income placed in a trust after it is received by the individual is subject to the rules applicable to Miller trusts. On the other hand, the S.M.M. provides that "[w]hen the right to income placed in the

trust actually belongs to the trust and not the individual the income does not count under SSI rules as income received by the individual." *S.M.M.* § 3529.7B1.

It is fundamental that the State Medicaid system must be consistent with, and no more restrictive than, the federal system. *See Wis. Dep't of Health & Family Servs. v. Blumer*, 534 *U.S.* 473, 479, 122 *S.Ct.* 962, 966, 151 *L.Ed.*2d 935, 943 (2002). In formulating standards to determine an applicant's eligibility for Medicaid *and* the extent of assistance to be received, "States must 'provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, *available* to the applicant.' § 1396a(a)(17)(B) (emphasis added)." *Ibid.* J.P. contends that under Federal Medicaid law "assets," which include both income and resources, are not considered "available" to her when, by court order, they are required to be paid to a supplemental needs trust and never pass through her hands. We agree, finding *Reames, supra,* and the Trudel letter to be entirely consistent with our reading of the Federal and State Medicaid statutes.[5]

We find no support for the State's contentions that J.P.'s trust is a Miller trust, that a special needs trust can only be used to shelter resources and not income, and that such trusts are to be treated differently before and after an applicant qualifies for Medicaid. The State's position is based on a misreading of the State Medicaid Manual, which clearly excepts from its entire discussion of Miller trusts situations "[w]hen the right to income placed in the trust actually belongs to the trust and not the individual." *S.M.M.* § 3259.7B1 (NOTE).[6] That is the situation

---

[5] We also find no merit in the State's contention that the alimony is "available" to J.P. because receipt of the income has been "deferred" as a result of her actions. *N.J.A.C.* 10:71-5.1(b)(1)(ii). Her receipt has not been "deferred." Rather, the right to receive the alimony has been irrevocably given to the trust by court order.

[6] *S.M.M.* § 3259.7C also contains a "NOTE" indicating that the rules concerning Miller trusts do "not apply to situations in which an individual has irrevoca-

here. Further the State's position, that special needs trusts may only be used to shelter "resources" and not "income," ignores the Medicaid statute's definition of the permissible "assets" that may be placed in a special needs trust, as including both resources and income. *See* 42 *U.S.C.A.* 1396p(d)(4)(A) and (e)(1). In turn, 42 *U.S.C.A.* § 1382a, to which section (e)(1) refers for a definition of "income," defines the term as including "alimony." 42 *U.S.C.A.* § 1382a(a)(2)(E).

The State's position also overlooks the fact that the trust exception in 42 *U.S.C.A.* 1396p(d)(4)(A) applies "[f]or purposes of determining an individual's eligibility for, *or amount of,* benefits under a State plan." 42 *U.S.C.A.* § 1396p(d)(1) (emphasis added). We construe the term "amount of" as indicating that the rules concerning special needs trusts apply both pre- and post-eligibility. Indeed, for purposes of the medically needy Medicaid nursing home program, the primary issue is the amount of benefits to which the participant will be entitled, since there is no income cap.

The State's position would also defeat the Legislature's purpose in allowing severely disabled persons to shelter some of their assets in special needs trusts. Moreover, DMAHS has not suggested any policy reasons why alimony should be treated differently from equitable distribution when, as here, a Family Part order directs that it be paid to a supplemental needs trust. In this case DMAHS concedes it is not challenging the placement of more than $30,000 in equitable distribution into the trust. The Family Part order creating the trust was entirely consistent with the legislative purpose to allow a severely disabled person to enjoy a somewhat better standard of living than the nursing home would provide her, including the ability to spend time with her daughter outside the nursing home. *See N.J.S.A.* 3B:11–36.

---

bly transferred his or her right to receive income to the trust. . . . [T]his income is no longer considered to be the individual's income. . . . [T]he statute requires that a *Miller* trust be established using the income of the individual."

To summarize, the special needs trust in this case is a legitimate Medicaid planning vehicle for which the Federal and State Medicaid laws clearly provide, and the agency's attempt to distinguish between alimony and equitable distribution placed in the trust has no rational or legal basis. In light of this determination, we do not address J.P.'s alternate arguments for reversal of the agency's decision.

Accordingly we reverse the agency's decision and remand for further proceedings consistent with this opinion, which shall include immediate reinstatement of J.P.'s Medicaid benefits at the appropriate level and reimbursement of all benefits wrongly withheld.

Reversed.